UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

|  |  |
|---|---|
| SAM FOOD, LLC, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) Case No. _____ |
| UNITED STATES OF AMERICA, | ) <br> ) |
| Defendant. | ) <br> ) |

# COMPLAINT

Plaintiff Sam Food, LLC, ("Sam Food") by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 U.S.C. § 279.7, hereby files this Complaint against Defendant United States of America, and alleges:

1. This action seeks judicial review of the Final Agency Decision ("FAD"), dated April 26, 2022, of the United States Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS") permanently disqualifying the retail food store from participation as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP").

# PARTIES

2. Plaintiff Sam Food is a limited liability company organized under and having its principal place of business in the State of Iowa. Sam Food is a resident and citizen of the State of Iowa.

3. Sam Food is the owner of a formerly SNAP-authorized grocery store located at 648 North Marquette Street, Davenport, Iowa 52802.

1

4. Sam Food is a "retail food store," as such term is defined in 7 C.F.R. § 271.2.

5. Defendant United States of America is the federal government.

6. USDA is an executive branch department of the federal government.

7. FNS is an agency of the USDA.

8. FNS administers and has promulgated regulations governing the SNAP pursuant to powers delegated by Congress in Section 4 of the Food and Nutrition Act of 2008. 7 U.S.C. § 2013.

9. Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to more than 41 million Americans and more than 290,000 residents of Iowa. SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

10. Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNS has regulatory authority to authorize and disqualify retail food stores from participation in SNAP.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, and 28 U.S.C. §§ 1331, 1346.

12. Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because Sam Food, the retail food store that is the subject of this action, is located in Scott County in this judicial district and because the United States of America is deemed a resident of this district and has consented to suit in this district.

13. Plaintiff Sam Food has exhausted any and all administrative remedies required prior to the institution of this action.

**FACTUAL ALLEGATIONS**

14. Sam Food is a small grocery store that serves an impoverished community in Davenport.

15. At all times relevant hereto, Sam Food carried hundreds of different SNAP-eligible food items.

16. Between December 24, 2008, and January 27, 2022, Sam Food was a "retail food store," authorized by FNS to redeem SNAP benefits. Sam Food's FNS-issued SNAP authorization number was 0166854.

17. On September 22, 2021, FNS Retailer Operations Division ("ROD") charged Sam Food with trafficking in violation of FNS's SNAP Regulations ("Charge Letter").

18. The Charge Letter set forth two (2) categories of trafficking violations that FNS contended Sam Food allegedly engaged, in violation of FNS's SNAP regulations. These categories are:

- Multiple transactions were made from accounts of individual households within a set time period; and

- Your store conducted EBT transactions are large based on observed store characteristics and recorded food stock.

19. The Charge Letter was accompanied by two (2) attachments, each of which set forth incomplete and redacted information about those transactions which FNS contended "reveal Electronic Benefit Transfer (EBT) transactions that establish clear and repetitive patterns of unusual, irregular, and inexplicable activity for your type of firm."

20. Trafficking is defined, *inter alia*, as the exchange of SNAP benefits for cash, alcohol, tobacco, or other ineligible food products. 7 C.F.R. § 271.2.

21. The penalty for trafficking is the <u>permanent</u> disqualification of the store, its owners, officers, and/or managers from SNAP. 7 C.F.R. § 278.6(e)(1).

22. In the attachments to the Charge Letter, FNS redacted the majority of each EBT card number for each beneficiary that redeemed EBT at Sam Food for each transaction listed on each attachment to the Charge Letter. By redacting the EBT card numbers and by failing to provide (or make available from state agencies that issue EBT cards to SNAP beneficiaries) the entirety of those beneficiaries' EBT card numbers and other personally identifiable information, FNS prevented Sam Food (and prevents other retailers charged with trafficking and other program violations) from contacting those SNAP beneficiaries whose EBT cards were used at Sam Food.

23. On or about October 2, 2021, Sam Food submitted its response to FNS's Charge Letter. Sam Food's response denied that any trafficking in SNAP benefits took place at Sam Food.

24. On January 27, 2022, FNS issued its initial determination permanently disqualifying Sam Food from participation in SNAP as an authorized retailer ("Permanent Disqualification Determination").

25. On February 10, 2022, Sam Food timely requested an administrative review of the Permanent Disqualification Determination, pursuant to 7 C.F.R. § 279.1 *et seq*.

26. On or about March 1, 2022, Sam Food submitted a request, pursuant to the Freedom of Information Act ("FOIA"), to FNS requesting certain records in the agency's possession related to the Charge Letter.

27. On March 3, 2022, Sam Food submitted its written response in support of its request for administrative review of the Permanent Disqualification Determination to FNS's Administrative Review Branch ("ARB"). Sam Food's response in support of its request for administrative review conclusively rebutted FNS's trafficking determination.

28. On or about April 6, 2022, FNS issued its response to Sam Food's FOIA request. While FNS produced a portion of the responsive records, it withheld or redacted numerous other responsive records.

29. During administrative proceedings, FNS relied upon records withheld from Sam Food and made its decision to permanently disqualify it from SNAP based on records never produced to the Plaintiff or its counsel.

30. On April 26, 2022, Rich Proulx, an FNS Administrative Review Officer ("ARO Proulx") issued FNS's FAD.

31. The FAD held that "review of the evidence supports that it is more likely true than not true that program violations occurred as charged. Based on the discussion above, the determination by the Office of Retailer Operations and Compliance to impose a permanent disqualification against Sam Food from participating as an authorized retailer in SNP is sustained." FAD, at 14. A copy of the FAD is attached hereto as Exhibit A.

32. In the FAD, FNS rejected all of Sam Food's arguments, notwithstanding the evidence it submitted and the absence of a preponderance of contradictory evidence.

33. FNS's Permanent Disqualification Determination and FAD relied upon records and other information never provided to Sam Food, including unredacted portions of its Case Analysis Document ("CAD").

34. FNS's CAD contains numerous incorrect factual determinations about Sam Food.

35. FNS's CAD was based largely upon a single, short visit conducted by an FNS contractor on April 9, 2021.

36.     FNS relied upon undisclosed analyses of other authorized retail food stores in the vicinity and the shopping habits of SNAP beneficiaries that shopped at Sam Food and other SNAP-authorized stores.

37.     FNS's Charge Letter and the FAD were largely based upon a cursory screening of EBT transactions through FNS's Anti-Fraud Locator Using EBT Retailer Transactions ("ALERT") system conducted by FNS's Case Screening Branch.

38.     No USDA or FNS official or employee ever visited Sam Food in connection with the issuance of the Charge Letter.

39.     No federal employee and no FNS official or employee ever visited Sam Food in connection with administrative review proceedings, including (but not limited to) the issuance of the FAD.

40.     Neither Calvin Thompson, the FNS Program Specialist who issued the Charge Letter, nor Gilda Torres, the FNS Section Chief who signed the Charge Letter and Permanent Disqualification Determination, ever conducted a store visit at Sam Food.

41.     At no time did Calvin Thompson, the FNS Program Specialist who issued the Charge Letter, or Gilda Torres, the FNS Section Chief who signed the Charge Letter and Permanent Disqualification Determination, ever speak with any owner or employee of Sam Food.

42.     At no time did Calvin Thompson, the FNS Program Specialist who issued the Charge Letter, or Gilda Torres, the FNS Section Chief who signed the Charge Letter and Permanent Disqualification Determination, ever speak with any SNAP beneficiaries who shopped at Sam Food.

43.     At no time did ARO Proulx ever conduct a store visit at Sam Food.

44.     At no time did ARO Proulx ever speak with any owner or employee of Sam Food.

45. At no time did ARO Proulx ever speak with any SNAP beneficiaries who shopped at Sam Food.

46. Upon information and belief, prior to issuance of the FAD, ARO Proulx spoke with Calvin Thompson and/or Gilda Torres regarding their investigation and conclusions/determinations.

47. Upon information and belief, prior to issuance of the FAD, ARO Proulx forward a copy of Sam Food's response in support of its request for administrative review to Calvin Thompson and/or Gilda Torres.

48. FNS's FAD was not based on an undercover investigation.

49. The FAD was primarily based upon FNS's review of EBT transactions at Sam Food.

50. The FAD was not based upon any declarations or affidavits from any USDA, FNS, or contractor which affirmed that any owner, member, officer, director, or employee of Sam Food provided cash, alcohol, drugs, or any other ineligible items in exchange for SNAP benefits.

51. FNS's determination in the FAD that Sam Food engaged in trafficking in violation of its SNAP regulations was premised upon arbitrary and capricious categories.

52. Neither the Food and Nutrition Act of 2008 nor FNS's SNAP regulations nor any other issuance by FNS defines or describes what constitutes "multiple transactions."

53. Neither the Food and Nutrition Act of 2008 nor FNS's SNAP regulations nor any other issuance by FNS defines or describes what constitutes "within a set time period."

54. Neither the Food and Nutrition Act of 2008 nor FNS's SNAP regulations nor any other issuance by FNS defines or describes what constitutes "clear and repetitive patterns of unusual, irregular, and inexplicable activity for your type of firm."

55. Neither the Food and Nutrition Act of 2008 nor FNS's SNAP regulations nor any other issuance by FNS defines or describes what constitutes "EBT transactions that are large."

56.     Neither the Food and Nutrition Act of 2008 nor FNS's SNAP regulations nor any other issuance by FNS defines or describes what constitutes "observed store characteristics" or "recorded food stock."

57.     FNS and its investigator did not take a comprehensive record of Sam Food's food stock.

58.     Any evidence in FNS's possession regarding "records food stock" was based exclusively on photographs taken by FNS's investigator.

59.     Photographs taken by FNS's investigator during the store visit on April 9, 2021, was an incomplete snapshot of the food stock purchased by Sam Food during the Review Period.

60.     Unlike cases involving undercover USDA or FNS investigators, none of the "evidence" complied by FNS prior to or during administrative proceedings against Sam Food is direct evidence of trafficking. Instead, all the evidence relied upon by FNS was, at most, circumstantial.

61.     The FAD is FNS's final administrative determination that its permanent disqualification of Sam Food from participation as an authorized SNAP retailer was properly imposed.

62.     The FAD did not determine that each of the transactions set forth in the Charge Letter were instances of trafficking in violation of FNS's SNAP regulations.

63.     No evidence exists to support that each of the transactions set forth in the Charge Letter were independent instances of trafficking in violation of FNS's SNAP regulations.

64.     The FAD concluded that *patterns* indicative of trafficking took place at Sam Food.

65.     FNS, by failing to produce records and other information which would permit Sam Food to contact its customers in order to defend against the trafficking charge, acted in an arbitrary and capricious manner designed to deprive the Plaintiff of the ability to properly respond to the Charge Letter and during Administrative Review proceedings.

66. All information reviewed and relied upon by FNS during administrative proceedings will be produced as the Administrative Record and/or during discovery during this judicial review proceeding.

67. FNS's ALERT system was the primary basis for its conclusion that Sam Food engaged in trafficking in violation of FNS's SNAP regulations.

68. FNS's ALERT system was the primary basis for its decision in the FAD to affirm the permanent disqualification of Sam Food from participation in the SNAP as an authorized vendor.

69. FNS placed improper reliance upon its ALERT system in determining that Sam Food engaged in trafficking in violation of the agency's SNAP regulations.

70. FNS's ALERT system does not take into account retailer-specific circumstances, including the volume of a retail food store's purchases.

71. FNS, in the FAD, ignored well-founded explanations that Sam Food did not engage in trafficking.

72. A higher-than-expected volume of a retail food store's purchases may account for EBT redemption at levels higher than anticipated by FNS.

73. FNS's ALERT system does not take into account the agency's non-discrimination policies which require, *inter alia*, retailers to redeem any or all of a SNAP beneficiaries' SNAP benefits without regard to the type of eligible food items purchased.

74. FNS's ALERT system does not take into account that SNAP beneficiaries are permitted to redeem EBT for any eligible food items, including the entirety of their monthly allotment or to make large purchases.

75. FNS's ALERT system does not take into account that SNAP-authorized retailers are not permitted to refuse to redeem EBT for eligible food items for any reason, including permitting persons who are not named or pictured on an EBT card to redeem SNAP benefits.

76. SNAP-authorized retailers are not permitted to refuse to process SNAP transaction from the same or different households even if SNAP beneficiaries seek to purchase eligible food items multiple times each day.

77. SNAP-authorized retailers are not permitted to ask EBT cardholders for identification.

78. Sam Food was not afforded the opportunity to evaluate and respond to all of the evidence in FNS's possession when it issued the Charge Letter.

79. Sam Food was not afforded the opportunity to evaluate and respond to all of the evidence used by FNS when it made its initial determination.

80. Sam Food was not afforded the opportunity to evaluate and respond to all of the evidence used by FNS during ARB proceedings.

81. Sam Food was not afforded the opportunity to evaluate and respond to all of the evidence reviewed and/or relied upon by FNS in making its FAD.

82. Requiring retailers to await judicial review proceedings before they are permitted to review all of the evidence in FNS's possession and relied upon by an Administrative Review Officer and other FNS officials is arbitrary and capricious.

83. FNS's SNAP retailer administrative process is Kafka-esque and more like a Star Chamber than an equitable federal administrative process.

84. FNS is the sole agency within USDA that does not hold evidentiary hearings during administrative proceedings that concern the revocation of a license or permit before an administrative law judge who is an attorney.

85. FNS is the sole agency within USDA that does not permit discovery during administrative proceedings that concern the revocation of a license or permit before an administrative law judge who is an attorney.

86. Federal administrative proceedings that concern the revocation of a license or permit issued by a federal agency must satisfy due process and other constitutional requirements.

87. FNS is not a law enforcement agency.

88. FNS investigators are not authorized by federal law to carry firearms or other weapons when conducting investigations of SNAP-authorized retailers.

89. No statute or regulation prohibits FNS from providing Sam Food with the entire administrative record during administrative review proceedings.

90. No statute or regulation prohibits FNS from convening evidentiary hearings during SNAP retailer administrative review proceedings.

91. By failing to provide Sam Food with all information available to it, FNS did not provide Sam Food with a meaningful opportunity to respond to the allegations in the Charge Letter in a manner consistent with the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

92. By failing to provide Sam Food with all information available to it, FNS did not provide Sam Food with a meaningful opportunity to participate during administrative review proceedings in a manner consistent with the Due Process Clause of the Fourth Amendment of the U.S. Constitution.

# COUNT I-DE NOVO REVIEW OF FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R § 279

93. Plaintiff repeats and re-alleges paragraphs 1 through 92 as if fully set forth herein.

94. At no time did Sam Food engage in trafficking in SNAP benefits.

95. At no time did Sam Food engage in trafficking in SNAP benefits.

96. At no time did any employee of Sam Food engage in trafficking in SNAP benefits.

97. At no time did any manager of Sam Food engage in trafficking in SNAP benefits.

98. At no time did any other person or entity affiliated with Sam Food engage in trafficking in SNAP benefits.

99. The transactions identified in the attachments to the Charge Letter are not patterns of SNAP transactions indicative of trafficking.

100. The transactions identified in the attachments to the Charge Letter are not "questionable transactions."

101. The transactions identified in the attachments to the Charge Letter did not have "characteristics that are consistent with trafficking violations in SNAP benefits."

102. The purported existence of more than one pattern of allegedly irregular transactions does not make a case of trafficking "more convincing."

103. FNS's permanent disqualification of Sam Food from participation in SNAP was invalid, unreasonable, arbitrary and capricious, unsupported by the evidence, and should be reversed.

104. A preponderance of the evidence before ARB during administrative review proceedings established that Sam Food did not engage in trafficking in SNAP benefits.

105. In the FAD, FNS incorrectly determined that a preponderance of the evidence demonstrated that Sam Food engaged in trafficking, in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

106. The permanent disqualification of Sam Food from participating in SNAP should be reversed because FNS failed to consider all evidence related to the store and the trafficking charges.

107. The permanent disqualification of Sam Food from participating in SNAP should be reversed because FNS failed to interview a single SNAP beneficiary whose EBT card was used at the store.

108. The FAD should be reversed because a permanent disqualification of Sam Food from participating in SNAP is unreasonable and excessive considering the circumstances.

109. FNS's acts and omissions during administrative proceedings were unreasonable, inequitable, in excess of the authority granted to it by Congress, and arbitrary and capricious.

110. FNS's acts and omissions during administrative proceedings violated and were not consistent with the requirements of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

111. Permanent disqualification of Sam Food from participating in SNAP is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

112. Permanent disqualification of Sam Food from participating in SNAP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to FNS to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

113. FNS's permanent disqualification of Sam Food from participating in SNAP based upon circumstantial evidence represents agency action beyond the scope of authority granted by Congress to FNS when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

114.    FNS's permanent disqualification of Sam Food from participating in SNAP based on the Charge Letter is inconsistent with a disqualification for a "reasonable period of time."

115.    FNS's determination that it was without authority to consider a penalty other than permanent disqualification of Sam Food from participating in SNAP is invalid and erroneous.

116.    The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

117.    In the FAD, FNS acted arbitrarily and capriciously in concluding that Sam Food engaged in trafficking in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

118.    FNS's permanent disqualification of Sam Food is premised upon an erroneous, unsupportable, and arbitrary and capricious interpretation of 7 C.F.R. § 278.6.

119.    In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to Sam Food and in its possession and that of state SNAP agencies.

120.    Pursuant to 7 U.S.C. § 2023 and 7 C.F.R. Part 279, this Court should conduct a *de novo* review of FNS's FAD which permanently disqualified it from participating in the SNAP.

WHEREFORE, Plaintiff Sam Food respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in their favor and against the United States, and issue an Order granting the following relief:

(a)     Reversing the FAD;

(b)     Rescinding the Charge Letter and Permanent Disqualification Determination;

(c)     Preliminarily and permanently enjoining FNS from disqualifying Sam Food from participation in SNAP based upon the Permanent Disqualification Determination, the FAD, or the alleged violations in the Charge Letter;

(d)        Directing FNS to immediately restore Sam Food's SNAP authorization and without requiring it to submit additional information or a new application;

(e)        Awarding Sam Food an amount equal to its reasonable attorney's fees and costs; and

(f)        Such other and further relief as the Court may deem just and proper.

Dated the 25th day of May 2022.

/s/ Peter J. Wenker
Peter J. Wenker
BROOKS LAW FIRM P.C.
3725 Blackhawk Road
Rock Island IL 61201
P: 309.786.4900
F: 309.786.4940
pjw@brookslawfirmpc.com

Stewart D. Fried (pro hac forthcoming)
Olsson Frank Weeda Terman Matz PC
2000 Pennsylvania Avenue, N.W.
Suite 3000
Washington, D.C. 20006
(202) 518-6326 (Direct)
(202) 747-3140 (Facsimile)
sfried@ofwlaw.com

*Attorneys for Plaintiff Sam Food LLC*